UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

EVAN N. WESTMORELAND, 05-R-2170,

                                 **Plaintiff,**                        07-CV-104(Sr)

v.

JAMES CONWAY, et al.,

                                 **Defendants.**

_____

## DECISION AND ORDER

Pursuant to 28 U.S.C. § 636(c), the parties have consented to the assignment of this case to the undersigned to conduct all proceedings in this case, including the entry of final judgment. Dkt. #13.

Currently before the Court is a motion to dismiss James Conway and Brian Fischer as defendants in this case due to their lack of personal involvement in the allegations set forth in the complaint. Dkt. #6. For the following reasons, defendants' motion is granted.

## BACKGROUND

Plaintiff, proceeding *pro se*, commenced this action pursuant to 42 U.S.C. § 1983, claiming deliberate indifference to his mental health, gross negligence and intentional infliction of pain and suffering, in violation of the Fourth and Fourteenth Amendments to the United States Constitution, while in the custody of the New York

State Department of Corrections ("DOCS"), at the Attica Correctional Facility ("Attica"). Dkt. #1. Specifically, plaintiff complains that beginning in August, 2006, he was denied adequate access to the Mental Health Unit and that defendant Dr. Rutigliano discontinued his psychotropic medication despite plaintiff's success on that medication for several years prior to his incarceration at Attica. Dkt. #1, ¶¶ 15, 17-18, 42 & 45. Following the discontinuation of that medication, plaintiff began to hear voices and relive traumatic events in his past. Dkt. #1, ¶¶ 51 & 62.

Although plaintiff acknowledges that the Inmate Grievance Review Committee ("IGRC"), dismissed his grievance and advised him to write to the Mental Health Unit Chief because mental health issues do not fall under the jurisdiction of the Inmate Grievance Procedure,[1] plaintiff complains that defendant James Conway, Superintendent of Attica, failed to respond to his appeal of the decision of the IGRC or to subsequent letters of complaint regarding his lack of mental health treatment. Dkt. #1, ¶¶ 19, 21 & 26-27. Plaintiff alleges that he wrote Superintendent Conway on several occasions "trying to get some re-consideration on his part so that plaintiff could be seen by the Mental Health Department of Attica," but never received any reply. Dkt. #1, ¶¶ 13-14 & 50.

---

[1] Specifically, plaintiff alleges that the Inmate Grievance Committee responded that:

> Grievant is advised to write the MHU Unit Chief. Mental Health issues do not fall under the IGP's jurisdiction. Grievance is dismissed per 4040, 701.5, 6, 4, l, d. End of report.

Dkt. #1, ¶ 19.

Plaintiff also alleges that defendant Brian Fischer, DOCS Acting Commissioner, has failed to respond to his letters complaining about the denial of proper mental health treatment at Attica. Dkt. #1, ¶ 23.

## DISCUSSION AND ANALYSIS

**Dismissal Standard**

When ruling on a motion to dismiss, the court accepts the material facts alleged in the complaint as true and draws all reasonable inferences in favor of the plaintiff and against the defendants. *See Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir. 1998); *Cohen v. Koenig*, 25 F.3d 1168, 1171-72 (2d Cir. 1994); *Atlantic Mutual Ins. Co. v. Balfour Maclaine Int'l Ltd.*, 968 F.2d 196, 198 (2d Cir. 1992). However, legal conclusions, deductions or opinions couched as factual allegations are not given a presumption of truthfulness. *Albany Welfare Rights Organization Day Care Center, Inc. v. Schreck*, 463 F.2d 620 (2d Cir. 1972), *cert. denied,* 410 U.S. 944 (1973). The court is required to read the complaint broadly and with great latitude on a motion to dismiss. *Yoder v. Orthomolecular Nutr. Inst.*, 751 F.2d 555, 558 (2d Cir.1985). The court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985).

The United States Supreme Court recently revisited the standard of review on a motion to dismiss and concluded that:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555(2007) (internal citations omitted). In setting forth this standard, the Supreme Court disavowed an often quoted statement from its decision in *Conley v. Gibson* that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* at 561, *quoting Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The Supreme Court explained that

> This "no set of facts" language can be read in isolation as saying that any statement revealing the theory of the claim will suffice unless its factual impossibility may be shown from the face of the pleadings; and the Court of Appeals [for the Second Circuit] appears to have read *Conley* in some such way when formulating its understanding of the proper pleading standard ...

*Id.* The Supreme Court decried that

> On such a focused and literal reading of *Conley's* "no set of facts," a wholly conclusory statement of claim would survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some "set of [undisclosed] facts" to support recovery. So here, the Court of Appeals specifically found the prospect of unearthing direct evidence of conspiracy sufficient to preclude dismissal, even though the complaint does not set forth a single fact in a context that suggests an agreement. It seems fair to say that this approach to pleading would dispense with any showing of a "'reasonably founded hope'" that a plaintiff would be able to make a case . . .

*Id.* at 561-62 (internal citations omitted). The Supreme Court then limited *Conley* to describing "the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival." *Id.* at 563. The Supreme Court reiterated that it did "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on it face." *Id.* at 570; *see Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937, 1949 (May 18, 2009).

**Personal Involvement**

Defendants Conway and Fischer argue that allegations that they ignored plaintiff's complaints are not sufficient to sustain a § 1983 claim against them. Dkt. #7.

"Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution. *Iqbal*, 129 S.Ct. at 1948. Thus, it is well settled that the personal involvement of defendants in an alleged constitutional deprivation is a prerequisite to an award of damages under § 1983. *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001)*; Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995); *Al-Jundi v. Estate of Rockefeller*, 885 F.2d 1060,1065 (2d Cir. 1989). Personal involvement may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation; (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong; (3) the defendant created or permitted the continuation of a policy or custom under which unconstitutional practices occurred; (4) the defendant was grossly negligent in supervising subordinates

who committed the wrongful acts; or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating unconstitutional acts were occurring. *Colon*, 58 F.3d at 873.

In the instant case, plaintiff alleges that he wrote letters to Superintendent Conway and Acting Commissioner Fisher complaining of the deprivation of mental health treatment and the discontinuation of his psychotropic medication. Dkt. #1, ¶¶ 13, 23, 26-27 & 50. Generally, however, "the allegation that a supervisory official ignored a prisoner's letter protesting unconstitutional conduct is not itself sufficient to allege the personal involvement of the official so as to create liability under § 1983." *Ward v. LeClaire*, No. 07-CV-6145, 2008 WL 3851831, at *3 (W.D.N.Y. Aug. 14, 2008) (collecting cases). "[T]o allow a mere letter to an official to impose supervisory liability would permit an inmate to place liability on individuals who had no authority over the situation complained of merely by sending letters. *Johnson v. Wright*, 234 F. Supp.2d 352, 363 (S.D.N.Y. 2002); *see Walker v. Pataro*, No. 99CIV.4607, 2002 WL 664040, at *12 (S.D.N.Y. April 23, 2002) ("if mere receipt of a letter or similar complaint were enough, without more, to constitute personal involvement, it would result in liability merely for being a supervisor, which is contrary to the black-letter law that § 1983 does not impose *respondeat superior* liability.").

It remains unclear in this circuit whether a supervisor who reviews and ultimately denies a grievance can be considered personally involved in the unconstitutional act underlying the grievance. *See Garcia v. Watts*, No. 08 Civ. 7778,

2009 WL 2777085, at *15 (S.D.N.Y. Sept. 1, 2009) (collecting conflicting cases). However, plaintiff's allegation is not that Superintendent Conway denied his grievance, but that he failed to respond to plaintiff's appeal of the dismissal of his grievance. Dkt. #1, ¶ 21. As alleged by plaintiff, his grievance was dismissed because the Inmate Grievance Committee lacked authority over the Mental Health Unit. Dkt. #1, ¶ 19.

Plaintiff's allegation comports with DOCS' Inmate Grievance Procedures, which state: "Any policy, regulation or rule of an outside agency (e.g., the division of parole, immigration and customs enforcement, the office of mental health, etc.) or action taken by an entity not under the supervision of the commissioner is not within the jurisdiction of the IGP." 7 NYCRR § 701.3(f). The Inmate Grievance Procedures further provide that the IGRC may dismiss and close a grievance if it determines that the grievant is seeking action with respect to any policy, regulation, rule or action of an agency not under the supervision of the Commissioner of Correctional Services. 7 NYCRR § 701.5(d). An inmate may appeal such a dismissal to the Inmate Grievance Program Supervisor. 7 NYCRR § 701.5(e)(iii). In addition, an inmate may pursue a complaint that the IGP supervisor failed to reinstate an improperly dismissed grievance by filing a separate grievance. 7 NYCRR § 701.5(e)(iii). Since the Superintendent is not part of the process for appealing the dismissal of a grievance for lack of jurisdiction over the issue complained of, Superintendent Conway's failure to respond to plaintiff's appeal of that dismissal cannot be construed as personal involvement.

## CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that the motion (Dkt. #6), to dismiss James Conway and Brian Fischer as defendants in this case due to their lack of personal involvement is **GRANTED**.

**SO ORDERED.**

DATED:   Buffalo, New York
         September 15, 2009

                                         s/ H. Kenneth Schroeder, Jr.
                                         **H. KENNETH SCHROEDER, JR.**
                                         **United States Magistrate Judge**